✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

8:00 am, Oct 05 2022
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLPHONE CURRENTLY IN THE POSSESSION OF THE FBI BALTIMORE FIELD OFFICE IN BALTIMORE, MARYLAND | Case No. 22-mj-02819-BAH <br><br> **FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Melissa Draper, Special Agent (SA) of the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

### I. PURPOSE OF THIS AFFIDAVIT

1. The FBI and Baltimore Police Department ("BPD") have been investigating Darius THOMPSON for violations of 21 U.S.C. § 841 (possession with intent to distribute controlled substances) (the "**SUBJECT OFFENSE**").

2. I submit this affidavit in support of a search warrant authorizing the search of a cellphone identified below and further described in Attachment A, which was taken into FBI custody on September 15, 2022 and stored in a secure manner at the Baltimore Field Division of the FBI, located at 2600 Lord Baltimore Drive, Baltimore, Maryland:

   a. A pink Apple iPhone, with IMEI: 352824488942977 ("**SUBJECT TELEPHONE**").

3. I submit that there is probable cause to believe that the **SUBJECT TELEPHONE** contains evidence, fruits, and instrumentalities of the **SUBJECT OFFENSE**. The search warrant would authorize members of the FBI, or their authorized representatives including other law enforcement agents assisting in the above-described investigation, to examine the **SUBJECT TELEPHONE** for the purpose of seizing electronically stored data described in Attachment B.

## II. AFFIANT BACKGROUND AND EXPERTISE

4. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

5. I have been a Special Agent with the FBI since 2018 and I have been assigned to the FBI's Safe Streets Task Force in Baltimore, which investigates violations of federal drug and firearms statutes.

6. I am currently participating in investigations concerning the illegal possession of firearms, controlled substance laws, and the commission of violent crimes by organized gangs. I received specialized training and personally participated in various types of investigative activities, including but not limited to: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge of firearms and controlled substance laws; (c) code words and phrases used by criminals when referencing firearms and narcotics; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; and (g) the handling and maintenance of evidence; and (i) Title III investigations.

7. Based on my training and experience, I know the following about persons engaged in illegal narcotics possession and the use of cellphones in furtherance of these activities, such as:

    a. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity, like controlled substances. The **SUBJECT TELEPHONE** has both digital storage capacity and digital camera capabilities.

    b. Criminals often place nominal control and ownership of telephones and other electronic devices in names other that their own to avoid detection of those telephones by government agencies. Even though these are in the names of other people, criminals retain actual

2

ownership, control, and use of the telephone and/or device, exercising dominion and control over them.

  c. Criminals often use different types of communication devices and change the numbers to these communication devices frequently. This is done to avoid detection by law enforcement personnel.

  d. Individuals who possess narcotics often use cellular phones to communicate privately with co-conspirators or to communicate with wider audiences to promote themselves or their acts.

  e. Cellular phones and other electronic devices capable of sending and/or receiving communications associated with criminals include various types of evidence. Phones may contain relevant text messages or other electronic communications; they may contain electronic address books listing the phone numbers and other contact information associated with co-conspirators; and they may contain other types of information.

  f. Criminals who engage in criminal activity with others take photos of themselves with high-end consumer items, like cars or watches, and other items they acquired during the crime. These "trophy" photos are often maintained on cellular telephones and electronic devices to be shared on social media, or as symbols of their success.

  g. Cellular telephones may contain location information that indicate where a user of the cellphone was located before, during, and after a crime has occurred.

  h. The mere fact of a cellular phone's call number, electronic serial number or other identifying information may be of evidentiary value as it may confirm that a particular cell phone and/or electronic device is the phone identified during a wiretap, pen register, or other electronic investigation.

8. I submit this affidavit for the limited purpose of establishing probable cause for a search warrant. I have not included every fact known to me concerning this investigation to date. Rather, I set forth only those facts I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information set forth in this affidavit derives from my personal knowledge and observations; discussions with other law enforcement officers and witnesses; and my review of police reports and public records. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

### III. JURISDICTION

9. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

### IV. PROBABLE CAUSE

10. On September 14, 2022, at approximately 11:25 a.m., BPD conducted routine surveillance of the 200 block of N. Eutaw Street, Baltimore, Maryland, through the use of live CitiWatch camera feed when their attention was drawn to a group of individuals gathered in front of Metro PCS (224 N. Eutaw Street). Metro PCS is located within the geographic footprint of the Lexington Market. The footprint of the Lexington Market is plagued by an extremely high volume of firearms related crimes, daily and constant CDS related crimes, and violent crimes to include: armed and unarmed robberies, aggravated and common assaults, non-fatal shootings, and homicides. Additionally, the Lexington Market area is a centralized major open-air drug distribution hub in downtown Baltimore, where various types of illicit CDS are distributed on a daily basis. At that time, BPD observed THOMPSON standing directly adjacent to the door of the Metro PCS counting paper U.S. currency.

11. Three minutes later, at approximately 11:28 a.m., THOMPSON was approached by an unidentified white male wearing a dark colored long sleeve shirt, dark colored pants, brown boots, and sunglasses. The unidentified male and THOMPSON appeared to engage in a brief conversation. THOMPSON then reached into his right pants pocket and withdrew a clear plastic bag. THOMPSON reached into the clear plastic bag, withdrew a small object, that was consistent in size and shape of CDS commonly sold in the area and placed the small object into the

4

unidentified male's right hand. The unidentified male then appeared to hand THOMPSON paper U.S. currency with his left hand. THOMPSON returned the clear plastic bag to his pants pocket, and the unidentified male walked away.

12. Based on my training and experience, I know drug dealers often sell illegal drugs to customers in exchange for money in quick interactions known as hand-to-hand drug transactions. Drug dealers often conducted these hand-to-hand drug sales in very brief and concealed or partially concealed motions in an attempt to allude police surveillance. Drug dealers also attempt to deter law enforcement detection by concealing drugs on their person, in their clothing such as pants pockets, and/or in nearby opaque containers such as plastic bags. Based on my training and experience, I believe the small object that THOMPSON handed the unidentified male is consistent in size and shape with illegal drugs sold in the Lexington Market area, and I believe the brief exchange between THOMPSON and the unidentified male is consistent with an illegal hand-to-hand drug sale.

13. After the suspected hand-to-hand drug transaction, THOMPSON retrieved a folding chair from a vehicle parked in the 200 block of N. Eutaw Street, put the chair in front of Metro PCS, sat down on the chair and placed a black plastic bag next to his chair. BPD alerted an arrest team who then responded to THOMPSON's location and took THOMPSON into custody. In a search of THOMPSON incident to arrest, officers recovered one clear plastic bag containing: 49 black-top glass vials containing white, rock-like substances; and one clear plastic bag containing 27 black-top glass vials containing white, rock-like substances from THOMPSON's right pants pocket. Additionally, BPD officers recovered 4 blue-top tubes containing plant material from the bag next to THOMPSON's chair where he was seen placing it, and the **SUBJECT TELEPHONE** from THOMPSON. The following day, on September 15, 2022, the

**SUBJECT TELEPHONE** was transferred from BPD to FBI custody. The suspected drugs were submitted to the BPD Evidence Control Unit.

14. Based on my training and experience, I know crack-cocaine is often packaged for street level distribution in glass vials. Therefore, I believe the black-top vials found on THOMPSON contained crack-cocaine. I also believe that the quantity of black-top vials (76 total) containing suspected crack-cocaine is indicative of a person engaged in the illegal sales of narcotics and is indicative of possession with intent to distribute controlled substances.

15. Based upon my training experience, I believe THOMPSON is involved in the trafficking of illegal drugs at Lexington Market. I know that people habitually carry cell phones with them and that people engaged in drug trafficking use them to communicate with other individuals involved in drug trafficking. Based on my training and experience, I believe THOMPSON uses the **SUBJECT TELEPHONE** to communicate with drug customers and other members involved in drug trafficking, therefore, I believe the **SUBJECT TELEPHONE** will contain evidence of illegal drug trafficking, namely possession with the intent to distribute controlled substances (the **SUBJECT OFFENSE**).

## V. BACKGROUND CONCERNING ELECTRONIC COMMUNICATIONS DEVICES

16. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. The **SUBJECT TELEPHONE** has both digital storage capacity and digital camera capabilities.

17. Individuals engaged in the distribution of narcotics and drug trafficking offenses often use cell phones to communicate with suppliers, to place orders with suppliers, to

communicate with customers, to receive orders from customers, and to arrange meeting times and locations for the distribution of controlled substances. The individuals engaging in drug trafficking will often use a combination of voice calls and text messages to coordinate drug transactions. Individuals engaged in drug trafficking offenses also use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity.

18. Narcotic traffickers often place nominal control and ownership of telephones in names other that their own to avoid detection of those telephones by government agencies. Even though telephones are in the names of other people, drug traffickers retain actual ownership, control, and use of the telephone, exercising dominion and control over them.

19. Drug traffickers utilize different types of communication devices, and change the numbers to these communication devices frequently. This is done to avoid detection by law enforcement personnel. Also, as noted above, drug traffickers dedicate different communication devices for different aspects of the trafficking organization.

20. Cellular phones associated with drug traffickers include various types of evidence. Phones may contain relevant text messages or other electronic communications; they may contain electronic address books listing the phone numbers and other contact information associated with co-conspirators; and they may contain other types of information.

21. Drug traffickers often take photos of themselves with large quantities of controlled substances, money, or high-end consumer items, like cars or watches. These "trophy" photos are often maintained on cellular telephones to be shared on social media, or as symbols of their success.

7

22. Finally, the mere fact of a cellular phone's call number, electronic serial number or other identifying information may be of evidentiary value as it may confirm that a particular cell phone is the phone identified during a wiretap, pen register, or other electronic investigation.

## VI. FORENSIC ANALYSIS OF ELECTRONIC COMMUNICATIONS DEVICES

23. Based on my training, I know that electronic devices such as cellular phones (smartphones) can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored on the **SUBJECT TELEPHONE** may still be stored on those devices, for various reasons, as discussed in the following paragraphs.

24. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT TELEPHONE** was used, the purpose of its use, who used it, and when.

25. There is probable cause to believe that this forensic electronic evidence might be stored within the **SUBJECT TELEPHONE** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the

attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

26. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

27. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

28. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

29. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. Additionally, the known specifics for the **SUBJECT TELEPHONE** are detailed in Attachment A and the types of information expected to be recovered from the devices are listed in Attachment B.

## VI.   CONCLUSION

9

31. Accordingly, there is probable cause to believe that evidence will be found from an analysis of the recovered **SUBJECT TELEPHONE**. The **SUBJECT TELEPHONE** may contain the records of the most recent calls, which may include calls with persons involved in the offense(s). The **SUBJECT TELEPHONE** may contain copies of SMS or text or other electronic communications relating to activities associated with the offense(s). The **SUBJECT TELEPHONE** may also contain a variety of other electronic evidence, including electronic communications through various cellular or internet-based applications, photographs and other information.

32. Wherefore, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for the **SUBJECT TELEPHONE** and authorize the search for the information set forth in Attachment B, where applicable, which constitute fruits, evidence, and instrumentalities of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841. There is good cause for the Court to authorize the requested searches at any time of the day or night. The **SUBJECT TELEPHONE** is already in law enforcement custody, and it is reasonable to allow law enforcement to execute the requested searches at any hour of the day, even during the evening or night, if doing so is convenient for the investigators or examiners. Because the devices are already in law enforcement custody, there will be no prejudice to any other person from this request.

33. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Special Agent Melissa Draper
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on September 30, 2022.

Honorable Brendan A. Hurson
United States Magistrate Judge
District of Maryland